## CIRCUIT COURT OF HENRICO COUNTY

Lucille Kirstein

v.

Dewey Kirstein

December 1, 1983

Case No. 80-C-52

By JUDGE E. BALLARD BAKER

By special appearance, Dewey Kirstein moves to dismiss this case against him contending:

(1) The Court lacks personal jurisdiction to award money relief to the plaintiff, Lucille Kirstein;

(2) Rule 2:4 forbids entry of a decree for the plaintiff.

A chronology of events follows:

On January 15, 1980, Lucille filed a Bill of Complaint for a divorce from Dewey, stating Dewey to be a non-resident and showing an address of the defendant in Wayland, Kentucky. The process was delivered to counsel for service on the defendant in Virginia, but that was never accomplished, nor was an Order of Publication requested. An Order of Publication would

not have given personal jurisdiction for the money relief requested.

On May 8, 1980, Dewey obtained a Decree of Dissolution of Marriage from Lucille from the Floyd Circuit Court in Kentucky. Lucille was advised of this action in accord with Kentucky law, but made no personal appearance and was not served with process in Kentucky. The decree also sought to divide the accumulated marital property.

On July 1, 1981, § 8.01-328.1 became effective, this making the long-arm statute applicable to persons who maintained a matrimonial domicile in Virginia.

Also, on July 1, 1981, § 16.1-241(L) became the law, this giving the Juvenile Court exclusive jurisdiction over support actions brought by "Any person who seeks spousal support after having separated from his or her spouse."

On August 17, 1981, Lucille filed an Amended Bill of Complaint in this Court, requesting spousal support or separate maintenance, including a lump sum award. Her Amended Bill referred to the Kentucky divorce decree of May 8, 1980, pointing out that Lucille made no appearance in that case, referred to as ". . . an in rem proceeding . . ."

On March 19, 1982, Dewey was personally served with the Amended Bill in West Virginia.

The Motion to Dismiss was filed on April 7, 1982.

The evidentiary hearing on November 21, 1983, established the following additional facts:

(1) Lucille was at all times aware that Dewey had an address in Wayland, Kentucky, the same address shown on the original Bill of Complaint. She was unable to locate Dewey in Virginia for personal service. She did not try to serve him in Kentucky.

(2) In March 1981, she found Dewey was in Morgantown, West Virginia.

The Amended Bill of Complaint alleges that Dewey maintained a matrimonial domicile at the time Lucille's cause of action for divorce or separate maintenance arose and at the time her right to separate maintenance arose. That allegation appears to meet the requirement of V.C. § 8.01-328.1(9), and, unless there is something wrong some place else, is sufficient for a claim for money relief. The fact that the matrimonial domicile pre-dated the above provision giving personal jurisdiction is of no consequence. Such an amendment to a long-arm statute has retroactive effect. Walke v. Dallas, 209 Va. 32; 19 A.L.R.3d 138 at 146.

Dewey contends that Lucille was not his wife when the Amended Bill was filed on August 17, 1981. This is true. The Kentucky divorce, obtained by Dewey on May 8, 1980, is not challenged by Lucille and, given full faith and credit, ended the marriage. However, Kentucky had no personal jurisdiction over Lucille and whatever the Kentucky court tried to do with respect to the property and her claim for support has no legal consequences.

While the marriage was over on May 8, 1980, Lucille's claim against Dewey with respect to spousal support remained. Newport v. Newport, 219 Va. 48.

It is suggested that after July 1, 1981, the Juvenile Court had exclusive jurisdiction over Lucille's claim for spousal support under § 16.1-296.

Lucille's Amended Bill of Complaint, filed August 17, 1981, asked for ". . . spousal support or separate maintenance including a lump-sum award. . ."

Prior to July 1, 1981, it seems clear that a Circuit Court had inherent jurisdiction to hear separate maintenance requests. Heflin v. Heflin, 177 Va. 385. And § 20-107 allowed the Circuit Court to order maintenance and support where no divorce was granted. In 1977, the General Assembly amended § 20-107 to

allow an award of a "lump sum payment, based upon consideration of the property interests of the parties . . ." Lump sum awards in divorce cases had been approved before 1977. Eaton v. Davis, 176 Va. 330.

What is the effect of the 1981 amendment giving the Juvenile Court exclusive original jurisdiction over cases involving "Any person who seeks spousal support after having separated from his or her spouse"?

While this is not free from doubt, this Court inclines to the view that where the request is for "spousal support or separate maintenance including a lump sum award," the Juvenile Court does not have jurisdiction. The 1981 amendment made no reference to § 20-107, and set out no criteria or basis for consideration of a lump sum award.

The "spousal support" the Juvenile Court can award is not defined, but reasonably construed it would seem to mean periodic payments to be paid by one spouse to another after a separation. Had the General Assembly wanted to give to Juvenile Courts the authority to grant a lump-sum award, it could have done so by saying so.

Spousal support does not necessarily include a lump sum award. Under § 20-107, a lump sum was "In addition to or in lieu of periodic payments for maintenance and support . . ." In the view of this Court, it takes more than the language of the 1981 amendment to give the Juvenile Court jurisdiction to award a lump sum.

That being so held, the conclusion is that the Amended Bill does raise an issue over which this Court has jurisdiction.

On August 17, 1981, Lucille and Dewey had not legally resolved any spousal support claims which Lucille may have had as a result of the marriage. She still had a claim arising out of the marriage relationship for support in terms of money, whether it be

called spousal support or separate maintenance, and a right to ask for a lump sum award.

Dewey contends, however, that Lucille had no right to file the Amended Bill on August 17, 1981, because of the Rule 2:4 provision that:

> No decree shall be entered against a defen-
> dant who was served with process more than
> one year after the institution of the suit
> against him, unless the Court finds as a
> fact that the plaintiff used due diligence
> to have timely service on him.

The argument by Dewey is that the August 17, 1981, Order allowing Lucille to file the Amended Bill is forbidden by this Rule. This is clearly a false argument. The Order merely allowed the filing of an Amended Bill of Complaint; it was not an Order entered against Dewey.

This Court further finds as a fact that Lucille did use due diligence to obtain personal service on Dewey in Virginia. While she could at any time have served Dewey by Order of Publication, or perhaps by personal out-of-state service, that would not have given the basis for the money claim she asserts. Not until the long-arm amendment in July 1981 was personal out-of-state service sufficient for the relief she seeks, and she followed that procedure in less than two months.

It follows that the Motion to Dismiss must be denied. Counsel are requested to submit an Order in accord, giving the defendant twenty-one days to file any further pleadings.